THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, vs. E. R. BACON, Plaintiff in Error.

*Opinion filed December 22, 1909—Rehearing denied Feb. 3, 1910.*

1. TAXES—*property actually in transit through Illinois cannot be taxed here.* Property actually in transit through Illinois from one State to another is exempt from local taxation, but if such property, during its transit, is stored in Illinois for an indefinite period for other than natural causes or lack of facilities for immediate transportation, it acquires a situs in Illinois for taxation.

2. SAME—*when grain in elevator may be taxed.* Grain in a Chicago elevator on April 1 and belonging to a resident of Illinois may be taxed in Illinois though it was shipped from foreign States to points of destination in other States, and was placed in the Chicago elevator, in pursuance of the terms of the shipping contracts, for the sole purpose of inspecting, weighing, cleaning, drying, sacking, grading, mixing and re-shipment to the points of destination and not for use or disposal in Illinois.

3. SAME—*the distinction between "imports" and goods shipped from other States.* As distinguished from "imports" from foreign countries, property which is shipped into one State from other States may be taxed by the former State if it is held there for sale or for any other purpose giving to the property a situs within such State.

4. SAME—*when status of being in transit is lost.* Grain which is removed from the cars and placed in an elevator for an indefinite time for the purpose of inspection, cleaning, weighing, mixing, etc., loses its status of being in transit, even though the owner intends, but is not obliged, to re-load the grain and forward it under the original shipping contracts to the points of destination.

WRIT OF ERROR to the Municipal Court of Chicago; the Hon. EDWARD A. DICKER, Judge, presiding.

MOSES, ROSENTHAL & KENNEDY, (WALTER BACHRACH, of counsel,) for plaintiff in error:

A contract for the carriage of grain from point of origin to point of destination is a contract for through shipment, notwithstanding such contract contains a provision permitting the milling, in transit, of the grain. Drinker on

Inter-State Commerce act, p. 96; *In re Unlawful Rates in Transportation of Cotton,* 8 I. C. C. Rep. 121.

The transportation of grain from one State to another is inter-State commerce, and such grain, while being so transported, is the subject of inter-State commerce. *The Daniel Ball* v. *United States,* 10 Wall. 557; *Coe* v. *Errol,* 116 U. S. 517; *Railroad Co.* v. *State,* 31 N. J. L. 531; *Coal Co.* v. *Carrigan,* 39 id. 35.

Property in commercial transit from one State to another cannot be taxed while so in transit. *Ferry Co.* v. *Commonwealth,* 114 U. S. 196; *Railroad Co.* v. *Pennsylvania,* 15 Wall. 232; *Lumber Co.* v. *Loraine,* 22 Fed. Rep. 54; *Lumber Co.* v. *Willetts,* 118 Ill. 559; *State* v. *Sugar Refining Co.* 79 Minn. 127; *Brown* v. *Houston,* 114 U. S. 622; *Meyers* v. *Baltimore County,* 83 Md. 383; *Welton* v. *Missouri,* 91 U. S. 275; *Almy* v. *California,* 24 How 174; *Cook* v. *Pennsylvania,* 97 U. S. 566; *Railroad Co.* v. *State,* 31 N. J. L. 531; *Coal Co.* v. *Carrigan,* 39 id. 35.

The temporary detention of the grain while in transit, without the intention of abandoning the original movement beyond the limits of the State, which was ultimately completed, did not deprive the transportation of the character of inter-State commerce. *Coe* v. *Errol,* 116 U. S. 517; *Lumber Co.* v. *Willetts,* 118 Ill. 559; *State* v. *Engle,* 5 Broom, 425; *Hayes* v. *Steamship Co.* 17 How. 597; *State* v. *Carrigan,* 10 Broom, 36; *Oil Co.* v. *Crain,* 209 U. S. 211.

The character of a shipment, whether local or inter-State, is not changed by a transfer of the title during the transportation. *Railroad Co.* v. *Texas,* 204 U. S. 403.

Louis J. Behan, (Harry A. Lewis, County Attorney, of counsel,) for defendant in error:

Taxes levied upon property based upon valuation do not fall within the constitutional provision prohibiting interference with inter-State commerce by the various States. *State Tonnage Tax cases,* 12 Wall. 204.

Where a general tax is laid on all property alike, it can not be construed as a duty on exports when falling upon goods not then intended for exportation, though they should happen to be exported afterwards. *Brown* v. *Houston,* 114 U. S. 622.

Each State may tax, at its own discretion, its own internal commerce and the franchise, property or business of its own corporations. *State Freight Tax case,* 15 Wall. 232.

A nation within whose territory any personal property is actually situated has entire dominion over it while therein, in point of sovereignty and jurisdiction, as it has over other immovable property situated there. Story on Conflict of Laws, sec. 550.

Mr. JUSTICE VICKERS delivered the opinion of the court:

This is a writ of error sued out of this court by E. R. Bacon to bring into review a judgment entered by the municipal court of Chicago in an action brought by the People of the State of Illinois against plaintiff in error to recover $360 alleged to be due from the plaintiff in error to defendant in error for personal taxes on a quantity of grain belonging to plaintiff in error. The case was tried in the court below upon an agreed state of facts, and resulted in a finding and judgment against plaintiff in error for the full amount claimed. The cause comes directly to this court because the action relates to revenue.

The following facts were stipulated: E. R. Bacon on April 1, 1907, and for many years prior thereto, had his residence and domicile in the town of Lake View, Cook county, Illinois. On April 1, 1907, the board of assessors of Cook county assessed a personal property tax against certain grain belonging to Bacon on a valuation of $5000. The assessment was established by the board of review and equalized by the State Board of Equalization, and the amount of the tax levied was $360. Prior to April 1,

1907, and the levying of the above assessment, the grain in question was owned by certain persons (hereafter designated as "original owners") who were residents of various States in the southern and western portions of the United States. The original owners entered into certain shipment contracts with certain railroad companies for the transportation of the grain to the cities of New York, Philadelphia and divers other cities in the eastern portion of the United States, (hereafter designated as "points of destination.") The shipment contracts reserved to the owners of the grain the right to remove it from the cars of the railroad companies at Chicago, Illinois, for the mere temporary purposes of inspecting, weighing, cleaning, drying, sacking, grading or mixing, or of changing the ownership, consignee or destination thereof. After making the shipment contracts the original owners delivered the said grain, under and in accordance therewith, at their respective residences, to the railroad companies for transportation to the said respective points of destination. The said transactions between the original owners and the railroad companies occurred prior to the tax and assessment on the grain and prior to the acquisition thereof by Bacon. While said grain was in transit, and prior to April 1, 1907, the original owners sold said grain and said shipment contracts, with the owners' right thereunder of removing the grain for the purposes specified above, to Bacon. Bacon was represented at points of destination by various agents, by and through whom he disposed of grain and other commodities on the eastern markets, and the grain in controversy was purchased by him solely for the purpose of being sold and disposed of by him, through these agents, at the ultimate points of destination. Upon the arrival of the grain at Chicago, Illinois, Bacon, in pursuance of the privilege of removal afforded him by the contracts of shipment, as the owner of said grain, removed it from railroad cars for the sole purpose of inspecting, weighing, cleaning, drying, sack-

ing, grading and mixing, as specified in the shipment contracts, and not for the purpose of changing the ownership, consignee or destination thereof, to a certain private elevator which was owned by him and which was situated in Chicago, Illinois. The grain remained in the elevator only for such time as was reasonably necessary for the accomplishment of the purposes for which it had been removed. Immediately after the accomplishment of such purposes it was replaced on cars of the same railroad companies for shipment to the points of destination, in accordance with the provisions of said shipment contracts, and was thereupon forwarded by said railroad companies to said points of destination. It is admitted that said grain was not at any time intended by said original owners, or by said Bacon, for use, sale or disposal in the State of Illinois, nor had any part thereof been used, sold or disposed of therein. During the brief period the grain was in Bacon's elevator the tax forming the basis of this suit was levied thereon. No other evidence was introduced by either party.

Under the foregoing facts the court was requested by plaintiff in error to hold that the enforcement of the tax against said grain would be an unlawful interference with inter-State commerce, in violation of the inter-State commerce clause of the Federal constitution, and that the said tax was therefore illegal and void. The court refused to so hold, and its action in that regard constitutes the principal ground of complaint in this court.

The sole question presented by this record is, was the grain upon which the tax was levied in transit on April 1, 1907? If it was so in transit it was not liable to be taxed while passing through the State to its destination. On the other hand, if it was not in transit but had a situs in this State it was subject to taxation under State authority.

In *Burlington Lumber Co.* v. *Willetts,* 118 Ill. 559, this court held that property in the course of transportation from one State to another over any of the public highways

of inter-State commerce was not liable to taxation as it passes over such highway, and that a mere delay in transportation, caused by low water or ice or other unavoidable cause, would not render the property being transported liable to taxation by the authorities where the detention occurred. The case above cited also has a bearing upon the question when property is and is not in transit. In that case the lumber company, which was located at Burlington, Iowa, anchored a large quantity of saw-logs in a harbor or bayou on the Illinois side of 'the Mississippi river for safe keeping until needed, and had leased the lands along the shore and employed an agent in this State to take care of them, and it appeared that the company had kept logs at such place for nine years before, and that they were kept there because it was safer and cheaper than to keep them at Burlington. Under these facts this court held that the logs were subject to taxation in this State, and that the owners might be deemed to be engaged in business in this State so far as the storage of the property was concerned.

In *Walton* v. *Westwood*, 73 Ill. 125, it was held that while property in transit from one county to another within this State was not liable to taxation in the county through which it might be passing on the day fixed by law for taxes to accrue, yet that grain purchased by one as agent and stored in his warehouse subject to the order of the owner, who resided out of the State, was not in transit so as to exempt the agent from taxation thereon.

In construing and enforcing the inter-State commerce clause of the Federal constitution, the rule has been established by the United States Supreme Court that property actually in transit from one State to another is exempt from local taxation, but if such property be stored for an indefinite time during such transit for other than natural causes or lack of facilities for immediate transportation it may be lawfully assessed by local authorities. *Brown* v. *Houston,* 114 U. S. 622; *Coe* v. *Errol,* 116 id. 517; *Pitts-*

*burg Coal Co.* v. *Bates,* 156 id. 577; Calvert on Regulations of Commerce, p. 291.

· In dealing with the power of the States to tax imported goods while in the original packages and in the possession of the importer, it must be borne in mind that the clause of section 10 of article 1 of the Federal constitution, which provides, in part, that "no State shall, without the consent of the Congress, lay any imposts or duties on imports or exports," creates a distinction between goods imported from foreign countries and those brought in from other States of our Union. The word "imports," in this section of the Federal constitution, applies only to articles imported from foreign countries and is an absolute prohibition of State taxation. (*Patapsco Guano Co.* v. *North Carolina Board of Agriculture,* 171 U. S. 345.) A different rule, however, obtains with respect to articles transported from one State to another. In such cases there is no positive prohibition like that against the taxation of imports from foreign countries, and the States have power to tax goods that are brought into this State from other States if they are held for sale here or for other purpose, giving to the property a situs within this State. *American Steel Co.* v. *Speed,* 192 U. S. 500.

Applying the principles and distinctions laid down in the foregoing authorities to the facts in the case at bar, we conclude that the grain in question was not actually in transit at the time the tax in question was assessed against it. The property was stored for an indefinite length of time in the private elevator of the owner. Both the property and the owner thereof were within the jurisdiction of the taxing authorities of this State. While there was a subsisting contract requiring the railroad companies to carry the grain to certain points beyond this State, there was no obligation on the part of the owner to send such grain forward if he found it desirable or profitable to dispose of it elsewhere. The mere intention of the owner to send the

grain forward under the original shipping contract could not have the effect of giving the property the·status of being in transit.

The judgment of the municipal court holding that the plaintiff in error is liable for the taxes in question is correct and is accordingly affirmed.    *Judgment affirmed.*