SIGNAL THREAD COMPANY, Appellant,

*v.*

DONALD R. KING, etc., Appellee.

435 S.W.2d 468.

(*Nashville,* December Term, 1967.)

Opinion filed October 11, 1968.

Opinion on Petition to Rehear filed December 31, 1968

STOPHEL, CALDWELL & HEGGIE, Chattanooga, for appellant.

GEORGE F. McCANLESS, Attorney General, and MILTON P. RICE, Deputy Attorney General, Nashville, for appellee.

MR. JUSTICE HUMPHREYS delivered the opinion of the Court.

This case presents the question whether Signal Thread Company was doing business during the tax years involved "in Tennessee and elsewhere", so as to entitle it to use the apportionment formula for excise and franchise tax set forth in T.C.A. secs. 67-2708 and 67-2914.

The Chancellor found appellant was not doing business elsewhere and dismissed its suit to recover the portion of these taxes appellant had claimed were due to business done elsewhere, and appellant has appealed assigning this action as error.

The case was tried on a stipulation of fact which in pertinent part is as follows:

"V. The Complainant is a Tennessee corporation whose principal business conducted within the State of Tennessee is and has been throughout the years in question selling, distributing, dealing in or using tangible personal property.

"The Complainant now, and during the years before the court, processes and finishes a limited amount of raw materials into finished thread at its plant in Chattanooga, Tennessee. A much larger portion of the thread sold by the Complainant or approximately 70% to 75% is now processed and finished, and was during the years before the court, at and by plants located in North Carolina, which plants are owned by other corporations, and operated in the manner described in section VII insofar as Complainant's products are concerned.

"VI. The Complainant's sales activity within the State of North Carolina during the years before the court and prior thereto consists of the following: the Complainant has one full-time resident employee in the State of North Carolina who lives in Charlotte, North Carolina. This employee solicits orders which are submitted to the home office at Chattanooga, Tennessee. Occasionally the orders are filled direct from goods on hand at Spindale, North Carolina. However, Complainant generally directs that the merchandise be shipped to its Chattanooga, Tennes-

see, office. Complainant advertises in the Yellow Pages of the Charlotte, North Carolina, phone book. In practice the salesman actually approves all orders from established customers established products. The sales which the salesman actually approves constitute the greater portion of sales made by the salesman.

"VII. The Complainant's other activity within the State of North Carolina during the years before the Court and prior thereto consists of the following: the Complainant enters into a contract for the purchase of a specified number of pounds of yarn at a fixed price. The Complainant also contracts for the processing of its yarn. During the years in question the Complainant contracted for the purchase and processing of the following amounts of yarn by Wiscassett Mills Company, located at Albemarle, North Carolina:

| Fiscal Year Ended | Pounds of Yarn |
| --- | --- |
| June 30, 1963 | 850,000 |
| June 30, 1964 | 75,000 |
| June 30, 1965 | 1,365,000 |
| June 30, 1966 | 775,000 |

"The first step in the processing of the yarn into finished thread is generally performed by Wiscassett Mills Company. At this mill the yarn is spun onto skeins, transfer tubes or cones, etc., as specified by the Complainant. Thread lubricant is also applied to the Complainant's yarn at this plant. The formula for the thread lubricant is owned by Complainant. The thread lubricant was developed by Eugene C. Doyle, who is the Complainant's Vice President in charge of production. The thread lubricant is applied to the Complainant's yarn in accordance with instructions furnished by Eugene Doyle.

"The Complainant's yarn is processed into thread at the Wiscassett Mills Company plant. The thread is made especially for the Complainant. The thread is designed and given an individual trade character by the Complainant to meet the requirements of its customers. At Wiscassett Mills Company the yarn is occasionally dyed according to colors specified by the Complainant. The price per pound paid for the processing varies according to the type of processing.

"Certain of the machines used at Wiscassett Mills Company in North Carolina to process the Complainant's yarn into thread are used approximately ninety per cent (90%) of the time for the processing of the Complainant's yarn. Occasionally Eugene C. Doyle recommends repairs or improvements to be made to these machines so that the machines will work properly. Wiscassett Mills Company does not otherwise normally process the type of thread processed for the Complainant. There are no legally binding restrictions however on said company's contracting with anyone else to do any kind of work it is capable of doing.

"The processing of the Complainant's yarn is supervised by the Complainant's skilled employees in the following manner: whenever questions arise concerning the processing of the Complainant's yarn, the Complainant's employees are contacted by phone to give advice regarding the problems that arise in processing the yarn into thread. In addition to numerous telephone calls, Complainant's skilled employees go to the plant at Albermarle, North Carolina, whenever problems develop to set up and check the machines used for the processing and to test the quality of the thread processed for the Complainant. Many suggestions and problems en-

countered by Wiscassett Mills Company are handled by correspondence between employees of Signal Thread Company and Wiscassett Mills Company.

"During the years in question Eugene C. Doyle, who is the Complainant's Vice President in charge of production, made a minimum of the following trips to North Carolina in connection with the production of Complainant's thread in North Carolina:

| Fiscal Year Ended | No. of Trips to North Carolina | No. of Days Spent in North Carolina |
|---|---|---|
| June 30, 1963 | 4 | 6 |
| June 30, 1964 | 5 | 11 |
| June 30, 1965 | 2 | 2 |
| June 30, 1966 | 3 | 3 |

The Complainant's employees spend whatever time is necessary at Wiscassett Mills Company located at Albermarle, North Carolina, to assure that the yarn which they have purchased is properly processed to meet the requirements of their customers.

"When the processing of the Complainant's yarn at Wiscassett Mills Company is completed a large part of the processed yarn is shipped to the Elmore Corporation located at Spindale, North Carolina for finishing. The processing at the plant located at Spindale, North Carolina, consists of dyeing and winding.

"The amount of thread which was finished by the Elmore Corporation at Spindale, North Carolina, was approximately 150,000 pounds per year for each of the years in question.

"In addition to the yarn processed and finished by Wiscassett Mills Company and the Elmore Corporation

for the Complainant, another North Carolina corporation, China Grove Cotton Mills, processed approximately 150,000 Pounds of yarn for the Complainant for each of the years in question. The processing of yarn into thread by China Grove Cotton Mills is not supervised as is the processing by Wisecassett Mills Company, since China Grove Cotton Mills can process yarn into thread without the supervision of Signal Thread Company's employees.

"In all cases of work done upon Complainant's products, the day-to-day activities of the contracting firms are carried on by the employees of said firms, and day-to-day supervision of said activities and employees are by the supervisory personnel of the contractor, except for the activities of Complainant hereinbefore set forth. The contractors are wholly responsible to Complainant for the end results of their work; however, if the work is performed as directed by the Complainant and according to the specifications and instructions furnished by the Complainant, the Complainant is wholly responsible to its customers for the products sold to its customers. Complainant has no employees located in North Carolina who are engaged in manufacturing other than its employee who goes to North Carolina as required as hereinbefore set forth in this paragraph, to the extent that his activities may be said to constitute engaging in manufacturing."

\*　\*　\*　\*　\*　\*

"IX. The Complainant normally has in process or awaiting shipment at the plant located in Spindale, North Carolina, approximately 45,000 to 50,000 pounds of thread.

"The Complainant has carried $50,000.00 of fire insurance on its thread located in the warehouse of the Elmore Corporation at Spindale, North Carolina, during all of

the years in question. The average value of Complainant's thread located at Spindale, North Carolina, for the years in question was as follows:

| Fiscal Year Ended | Amount |
|---|---|
| June 30, 1963 | $45,767.66 |
| June 30, 1964 | 57,066.00 |
| June 30, 1965 | 62,501.00 |
| June 30, 1966 | 86,893.00" |

\* \* \* \* \* \*

"XXVI. Complainant owns no real estate in North Carolina and no personalty other than such of its products as may at a given time be in the course of processing by independent contractors or completed and awaiting shipment according to Complainant's order. Complainant operates no office, warehouse or other place of business in North Carolina, except to the extent that its salesman utilizes his home as an office, and to the extent that Complainant utilizes the plants of other concerns as described in sections VI and VII of this stipulation. All orders for its products are subject to approval at Complainant's home office in Chattanooga."

\* \* \* \* \* \*

"XXVIII. At no time during the years 1962 to 1966, inclusive, has any tangible personalty owned by Complainant been listed or assessed for taxation in North Carolina, nor has any property tax been paid thereon."

Vol. I, Tr.

"For its fiscal years ending in 1959, 1960, and 1961, complainant filed Tennessee franchise and excise tax returns and paid said taxes upon an apportioned part of its net worth and net earnings. (Tr. 41, 90-93) These were accepted as filed until October 19, 1961, when com-

plainant was contacted by the Franchise and Excise Tax Division of the Department of Revenue relative to complainant's right to apportion. (Tr. 45) On July 10, 1962, complainant advised that it had a sales office and engaged in manufacturing in North Carolina. (Tr. 45) In July of 1965, auditors sent to complainant's Chattanooga home office learned that complainant's claimed North Carolina office was the home of its salesman and that the claimed North Carolina manufacturing was actually performed by other corporations. (Tr. 45) Upon so learning, defendant demanded of complainant additional taxes based upon the portion of its tax base apportioned to other states upon its previous returns. (Tr. 45) On September 2, 1966, defendant submitted to complainant a tax bill in the total amount of $12,135.83, representing franchise and excise taxes and appropriate interest for fiscal years ending on June 30 of each of the years 1963, 1964 and 1965. (Tr. 41)

"Prior to the year 1966, complainant never paid to North Carolina any tax upon or measured by its net income, nor was it ever called upon to pay such a tax. (Tr. 38) On July 16, 1966, there was addressed to the North Carolina Department of Revenue by complainant's counsel a letter, describing complainant's North Carolina activities without naming complainant, and inquiring as to whether such activities gave rise to liability for the North Carolina income tax. (Tr. 38, 71) The appropriate administrative agency of North Carolina replied on July 27, 1966, advising that it was of the opinion that such liability existed. (Tr. 38, 70)

"On September 15, 1966, complainant filed a North Carolina tax return reflecting for its fiscal year ending June 30, 1966, an income tax liability of $1,577.00 and a

franchise tax liability of $169.00, which amounts were contemporaneously paid. (Tr. 38, 39) On the following day, September 16, complainant mailed to defendant its check for $12,135.83 representing payment of the Tennessee franchise and excise deficiency for the years 1963-1965 previously referred to. (Tr. 41, 42)

"On October 11, 1966, complainant filed franchise and income tax returns with North Carolina and paid the taxes reflected thereby as follows:

| Fiscal Year Ended | Franchise Tax | Income Tax | Total |
|---|---|---|---|
| June 30, 1963 | $116.03 | $1,045.45 | $1,161.48 |
| June 30, 1964 | 131.00 | 1,144.00 | 1,275.00 |
| June 30, 1965 | 127.00 | 1,356.00 | 1,483.00 |

"Two days later, on October 13, 1966, complainant filed this suit. (Tr. 11)"

With expected perspicacity the learned Chancellor summarized and disposed of the case in a brief memorandum as follows:

"This case is before the Court on a stipulation of facts and therefore a finding of fact will not be made.

This case is another wherein a Tennessee corporation asserts the right to apportion its tax base under the franchise and excise taxing statutes of Tennessee. The basic ground for the claim is that it is doing business 'in Tennessee and elsewhere' within the purview of Sections 67-2706 (excise tax) and 67-2912 (franchise tax), T.C.A.

The assertion that business is done in North Carolina is based upon the following considerations:

1. The maintenance in Charlotte of one full-time employee who uses his home as an office;

2. The engagement by complainant of other corporations in North Carolina to do manufacturing work for it upon a contract basis;

3. The presence in North Carolina of inventory in the course of processing or awaiting shipment; and

4. The voluntary payment by complainant to North Carolina, immediately prior to the commencement of this suit, of corporate income and franchise taxes for the tax periods covered by this suit.

It appears to me that the voluntary payment by the complainant is an admission that numbers 1, 2, and 3 above did not constitute 'doing business in Tennessee and elsewhere.'

Having paid North Carolina taxes only as a last resort and voluntarily, well after the fact of alleged liability, complainant comes into court and undertakes to use such payment as a peg on which to hang its claim to apportionment.

In *Southern Chemical Cotton Co. v. Butler,* No. 84446 (same counsel for taxpayer as in present cause), a solely Tennessee corporation sought to apportion upon the basis of nominal income tax returns filed with the State of Georgia upon the advice of counsel, no substantial Georgia activity other than sales to Georgia customers appearing.

When you consider the Southern Chemical Cotton Company case and also the Rigo Chemical Company case it is readily apparent that these two cases are controlling

and therefore the complainant's bill should be dismissed at its cost.

Mr. Rice will draw the decree.

s/ Ned Lentz,

Ned Lentz, Chancellor.''

We have concluded the Chancellor correctly disposed of the case, and that this Court should affirm his decree.

As we view it, the assertion that appellant was doing business in North Carolina during the tax years involved is based upon the following: (1) The maintenance in Charlotte of one full-time employee, engaged in selling thread, who uses his home as an office. (2) The engagement by appellant of corporations in North Carolina to do manufacturing work for it upon a contract basis; during which manufacturing work one or more of appellant's employees is required to go from Tennessee to North Carolina for quality inspection checks of machines and product to see that the special quality of the thread is maintained. (3) The presence in North Carolina of inventory in the course of processing or awaiting shipment. (4) The voluntary payment by complainant to North Carolina, immediately prior to the commencement of this suit, of corporate income and franchise taxes for the tax periods covered by this suit.

Neither the individual nor the collective effect of these factors amounts to doing business elsewhere, so as to entitle appellant to apportion as it insists. *John Owenby Co. v. Butler,* 211 Tenn. 366, 365 S.W.2d 33.

The first factor, the maintenance in Charlotte of a full-time salesman who uses his home as an office cannot be considered for the purpose of determining the doing

of business elsewhere. In the 1963 case reported as *John Owenbey v. Butler,* supra, we held that since under 15 U.S.C.A. sec. 381, the solicitation of orders for tangible personal property subject to approval and delivery from outside the State constitutes interstate commerce, it is a part of the interstate activity of a Tennessee Corporation and so cannot be considered as localized in the foreign state for excise-franchise tax purposes. Since the sole purpose of the employee's activity in North Carolina is the handling of orders subject to approval in Tennessee, this factor does not constitute doing business in North Carolina. The fact this general policy is sometimes deviated from in practice does not, of course, alter the situation. It is not the exception, but the general course of business which must be looked to.

◼ Appellant's contract with a North Carolina manufacturer does not amount to doing business in North Carolina. According to the stipulation, the North Carolina manufacturer is an independent contractor fully liable to appellant for its manufacture of the product according to appellant's specifications. The fact that from time to time certain officials and employees of appellant go from Tennessee to North Carolina to make checks with respect to the product and the setting of the spinning machinery so as to see that a certain quality is maintained, does not amount to the doing of business in North Carolina. In fact, we doubt very seriously whether the bare maintenance of resident inspectors for these purposes would constitute such doing of business as is contemplated by our statutes. *United States v. Boyd,* 211 Tenn. 139, 363 S.W.2d 193. There, far more extensive controls over the contractor than are shown here were held not to change its status as an independent contractor.

■ Appellant's contention that it is doing business in North Carolina because it continuously has a quantity of manufactured thread at the mills of its North Carolina contractor is not tenable. This thread is either in the course of processing or awaiting immediate shipment on appellant's order. The thread is not warehoused by appellant. Nor, are ad valorem taxes paid by appellant to North Carolina on this thread as required by N.C.G.S. secs. 105-280 et seq.; which fact has added relevancy in view of the appellant's concern voluntarily to pay North Carolina taxes it would owe for its corporate presence and activities there, if it were there.

On the stipulated facts we find appellant is not maintaining on a permanent basis an inventory of thread in North Carolina. But, that we must consider the accumulated manufactured product of appellant's independent contracts in North Carolina as temporarily in North Carolina just as appellant has, and property temporarily in a state acquires no situs for tax purposes. *City of Clinton, Okl., ex rel. Schuetter v. First Nat. Bank in Clinton,* D.C. Okl., 39 F.Supp. 909, affirmed, C.C.A.; *Hann v. City of Clinton, Okl., ex rel. Schuetter,* 131 F.2d 978; *Brock & Co. v. Board of Sup'rs of Los Angeles County,* 8 Cal.2d 286, 65 P.2d 791, 794, 110 A.L.R. 700; *Guinness v. King County,* 32 Wash. 2d 503, 202 P.2d 737, 6 A.L.R. 2d 1361.

■ Finally, we are of opinion appellant's voluntary payment of franchise and income taxes to North Carolina can in no way affect its liability to pay all of the franchise and excise taxes which it may owe to Tennessee.

■ From the facts stipulated it is readily inferrable appellant's payment of North Carolina taxes was

prompted by this Court's holding in *Roane Hosiery, Inc. v. King,* 214 Tenn. 441, 381 S.W.2d 265 (1964), where it was held that a taxpayer seeking apportionment has the burden of showing it was doing business elsewhere during the tax period and that applicable taxes were paid elsewhere for this privilege.

While, as indicated at the argument of this case at the bar of the Court, the bare fact the payment of applicable taxes elsewhere was voluntary will not deprive a taxpayer of a lawful right to apportion, such a belated payment cannot absolve a taxpayer of liability to Tennessee unless it has carried the burden of showing that it actually was doing intrastate business elsewhere.

We do not think *Hawes v. William L. Bonnell Co.,* 116 Ga.App. 184, 156 S.E.2d 536 (1967), nor *Bedford Mills, Inc. v. United States,* 59 F.2d 263 (1932) are contrary to our view. The Hawes case is distinguishable in that the taxpayer actually maintained an office in New York City, and had property located in other states on a permanent basis.

In the Bedford Mills case it was held under certain federal income and excess profit tax regulations not applicable here, that the taxpayer was a manufacturer rather than a trader; in which latter case it would have been entitled to a preferred inventory valuation. There, of course, the choice was between trader and manufacturer and since the taxpayer had to be one or the other the court found he was, under applicable regulations, a manufacturer. Here, the specific inquiry is whether appellant is a manufacturer in North Carolina or not, and it is plain from the facts that it is not; so the case is inapplicable.

The assignments of error are overruled, and the decree of the Chancellor dismissing appellant's suit is, in all things, affirmed.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and CRESON, JUSTICES, concur.

Opinion on Petition to Rehear

MR. JUSTICE HUMPHREYS.

Signal Thread Company has filed a petition to rehear, the purpose of which is to have this Court review its holding that the processed thread in the hands of a processer in North Carolina does not constitute doing business elsewhere than in Tennessee on the part of petitioner.

We have reconsidered this holding in the light of cases cited in the petition, *R. J. Reynolds Tobacco Co. v. Carson,* 187 Tenn. 157, 213 S.W.2d 45 (1948); *People v. Bacon,* 243 Ill. 313, 90 N.E. 686, 44 L.R.A., N.S., 586, affirmed 227 U.S. 504, 33 S.Ct. 299, 57 L.Ed. 615 (1913); and *Coe v. Town of Errol,* 116 U.S. 517, 6 S.Ct. 475, 29 L.Ed. 715 (1886), and find no reason to change our holding.

The Reynolds Tobacco Company case is not in point. There, Reynolds, a foreign corporation, stored large quantities of goods in public warehouses in this state for sale and delivery to its customers in Tennessee. This, of course, was held to be doing business. In the present case, the processed thread is in the hands of the independent contract manufacturers simply as the last step in the manufacturing process. This is the fair inference from the stipulation and from the additional fact that complainant Signal Thread Company indicated that it regarded the property as being in this situation by its failure to list the property for taxation by North Carolina.

This distinction makes the Bacon case inapplicable. The question there was whether the grain had a situs in Illinois for taxation, or was in the state in interstate commerce. It was held that since the grain had been withdrawn from the carrier it was not in interstate commerce so as to be exempt from state taxation. The court pointed out that the owner of the property, having withdrawn it from the hands of the carrier, and having it in his possession, had the privilege of doing with it as he might choose, so it could not be regarded as in transit from one state to another.

*Coe v. Errol* is another interstate commerce case, and has nothing to do with the question of what constitutes doing business.

Petitioner's criticism of the Court's citation of *City of Clinton, Oklahoma, ex rel. Schuetter v. First National Bank in Clinton,* 39 F.Supp. 909, affirmed *Hann v. City of Clinton, Oklahoma, ex rel. Schuetter,* 131 F.2d 978; *Brock & Company v. Board of Sup'rs of Los Angeles County,* 8 Cal.2d 286, 65 P.2d 791, 110 A.L.R. 700 (1937); and *Guinness v. King County,* 32 Wash. 503, 202 P.2d 737, 6 A.L.R.2d 1361 (1949), as not being in point is unwarranted. These cases were not cited a being in point with the present case, but simply as authority for the general proposition that property in a state does not necessarily have a situs there for taxation, where the stay of the property in the state is temporary as where the property continues in the hands of its manufacturer, and has not been warehoused in the name of the one for whom manufactured.

■ The conclusion of the whole matter is that the processed thread in the hands of the independent con-

tractor manufacturer was there as a part of the process of manufacture, and not as an independent act of business on the Thread Company's part in the state of North Carolina. This is implicit from the whole record, and from the treatment of the property in reference to the Thread Company's duty to North Carolina to list the thread for taxation under North Carolina taxing statutes, particularly N.C.G.S. sec. 105-280, which provides for the listing of tangible personal property for taxation if it has a taxable situs in the state.

There are some other things said in the petition to rehear but, since they complain of matters that had nothing to do with the conclusions reached in the Court's opinion, they need not be dealt with here.

The petition to rehear is denied.

BURNETT, CHIEF JUSTICE, AND DYER, CHATTIN AND CRESON, JUSTICES, concur.