George M. TIDWELL, Commissioner of
Revenue for the State of Ten-
nessee, Appellant,

v.

SECURITY MILLS, INC., Appellee.

Supreme Court of Tennessee.

June 3, 1974.

David M. Pack, Atty. Gen., Everett H. Falk, Asst. Atty. Gen., Nashville, for appellant.

W. W. Davis and W. W. Davis, Jr., Knoxville, for appellee.

## OPINION

FONES, Justice.

Security Mills, Inc., plaintiff below, hereinafter "taxpayer", brought suit against George M. Tidwell, as Commissioner of Revenue for the State of Tennessee, hereinafter "Commissioner", to recover $37,275.97 for franchise and excise taxes paid under protest and alleged to have been erroneously assessed. Commissioner prosecutes this appeal from a judgment in favor of taxpayer.

Commissioner concedes that taxpayer is doing business " . . . in Tennessee and elsewhere," and is entitled to use the apportionment formula for corporations authorized in T.C.A. § 67–2706. It is conceded that taxpayer's excise tax is to be apportioned pursuant to T.C.A. § 67–2707, applicable by its terms to those corporations whose principal business in this State is "manufacturing or . . . any form of collecting, assembling or processing of goods or material," and that its franchise

tax is to be determined by T.C.A. § 67–2913, applicable to corporations similarly engaged. T.C.A. § 67–2707 provides for apportionment to Tennessee of the net earnings of a corporation on the basis of the ratio obtained by taking the arithmetical average of three ratios, wherein the value of assets, the manufacturing costs and the gross sales in Tennessee provide the numerators and total assets, total manufacturing costs and total gross sales, within Tennessee and elsewhere, provide the respective denominators. The franchise tax apportionment omits the ratio involving gross sales, but is otherwise identical.

The controlling statutes are as follows:

"67–2706. *Apportionment for corporations doing business outside state.*—In the case of corporations, cooperatives, joint-stock associations and business trusts doing business in Tennessee and elsewhere the net earnings shall be apportioned as hereinafter set forth and the net earnings thus apportioned to Tennessee shall be deemed to be the earnings arising from business done within the state and shall be the measure of this tax. Such method of apportionment shall be as set forth in §§ 67–2707—67–2712."

"67–2707. *Apportionment of manufacturing earnings.*—If the principal business in this state is manufacturing or if it is any form of collecting, assembling or processing of goods or material, the entire net earnings shall be apportioned to Tennessee on the basis of the ratio obtained by taking the arithmetical average of the following three (3) ratios:

(a) The ratio of the value of its real estate and tangible personal property in this state on the date of the close of the fiscal year, to the value of its entire real estate and tangible personal property, with no deductions on account of encumbrances thereon.

(b) The ratio of the total cost of manufacturing, collection, assembling or processing within this state, to the total cost of manufacturing, collecting, assembling or processing within and without the state.

(c) The ratio of the gross sales to customers within Tennessee to the total gross sales from all sources."

The Commissioner's conference memorandum, filed as an exhibit in the record, reflects that he made a finding that taxpayer neither owned nor operated three out-of-state mills, through which facilities taxpayer's raw materials were processed into the finished product, packaged, warehoused and warehouse door deliveries made to its customers. Commissioner concluded that taxpayer was not doing business as a manufacturer outside of Tennessee because its manufacturing or processing operations were similar to, if not identical with, the factual situation in Signal Thread Co. v. King, 222 Tenn. 241, 435 S.W.2d 468 (1968). Commissioner recomputed taxpayer's excise tax, using the two parts of the formula involving the ratio of assets and gross sales in Tennessee to assets and gross sales everywhere, but used 100% for the other fraction of the 3-part formula. The ratio of 100% was determined by using the manufacturing costs in Tennessee as both the numerator and denominator, thus disallowing as a factor in the apportionment formula the cost of raw materials, the per ton mixing fee, and all other expenses connected with the processing operations at the three out-of-state mills. Parenthetically, the Commissioner notes that said out-of-state expenses are treated as a proper business expense. It is obvious, however, that insofar as the apportionment formula is concerned, the Commissioner's computation has the effect of treating all costs and expense, including the cost of raw materials, of processing taxpayer's feed products in Georgia and North Carolina as having been incurred in Tennessee.

The facts are essentially these: Taxpayer is engaged in business as a manufacturer of animal and poultry feeds, with a manufacturing facility and its home office in Knoxville. Taxpayer has a written

contract with Flowery Branch Milling Company, the owner of a feed mixing plant at Flowery Branch, Georgia, and a written contract with L. R. Tucker Company, Inc., owner of a feed mixing plant at Royston, Georgia. Both contracts provide that the mill owners will operate their respective plants for the purpose of mixing feeds exclusively for taxpayer, for which taxpayer pays a per ton fee for feed mixed, packaged, labeled and warehoused at the respective mills. Taxpayer purchases and ships to the two Georgia mills all of the raw materials that are incorporated in the finished feed, provides all concentrate, premix and other ingredients used in mixing the feed. The feed is mixed in conformity with formulas and instructions provided by taxpayer, and taxpayer regularly samples the finished product. The taxpayer provides all bagging and labels, pays the stamp taxes and insures its inventory against fire and extended coverage, and carries products liability insurance on the products processed at said plants. Taxpayer has a representative that works fulltime at the Flowery Branch mill. The contract provides that he is to be furnished office, space at the mill; that he will perform certain duties for taxpayer, such as sampling, invoicing, etc.; that when not performing for taxpayer, he may perform such duties as Flowery Branch deems best; that his salary is to be paid one-half by each party. Taxpayer offered evidence at the trial of the case that, in fact, said representative was a fulltime employee of, paid entirely by taxpayer, and that he actually functioned as the Plant Manager. The evidence shows that at the Tucker mill, Mr. Tucker, the owner, actually operates the plant, and taxpayer does not deem it necessary to have a representative there. Taxpayer pays a higher per ton fee to the Tucker mill because of Mr. Tucker's services.

Taxpayer is involved in a third milling operation out-of-state. Taxpayer owns 100% of the stock of Security Mills of Greensboro, Inc., a North Carolina corporation. The officers of taxpayer corporation hold similar offices in the N. Carolina corporation. The N. Carolina corporation owns and operates a feed mill at Climax, North Carolina, that mixes feeds exclusively for taxpayer in the same manner as the two Georgia mills. No written contract exists between the Tennessee corporation and its wholly owned subsidiary in North Carolina, but the operating relationship between the two companies was described as exactly the same as between taxpayer and the two Georgia mills, except that the personnel operating the Climax mill were regarded as taxpayer's "own people".

Taxpayer sells its feed products in North and South Carolina, Kentucky, Georgia, Florida, as well as Tennessee, and employs approximately seven out-of-state salesmen. The day-to-day production at the three out-of-state mills and the particular animal feeds that are mixed, are dictated by taxpayer, in accord with its customer demand.

Taxpayer's assets outside Tennessee consist of retail stores, bulk stations, trucks, cars and manufacturing facilities. The record vaguely infers that its manufacturing facilities are located in Florida. We can only infer that such facilities are not used by taxpayer to mix its own feeds. If they were so used, unquestionably taxpayer would have incurred manufacturing costs outside of Tennessee, but the record shows that the Commissioner has allowed zero for out-of-state manufacturing costs and the taxpayer makes no reference to any costs other than those incurred at the three mills heretofore mentioned.

In *Signal Thread,* supra, the issue was whether or not the taxpayer was doing business in Tennessee and elsewhere, so as to entitle it to make use of the apportionment formula.

Signal Thread had yarn processed at three mills in North Carolina. As part of its dealings with out-of-state mills, it simply purchased a specified number of pounds of yarn at a fixed price. As a second modus operandi, it contracted for the pur-

chase and processing of yarn. This processing was done, at least as to the finishing steps, in accord with formulas or directions furnished by taxpayer, and a thread lubricant, the formula for which was owned by complainant, was applied. The thread was made especially for the taxpayer and given an individual trade character by the taxpayer to meet the requirements of its customers. A large part of the yarn processed, as above stated, done at the Wiscassett mill, was then shipped to the Elmore mill for finishing. The taxpayer also had a substantial quantity of yarn processed at a third mill, China Grove. The details of that operation are not revealed. Neither of the mills with which Signal Thread contracted performed work exclusively for said company, and it appears clear from the opinion that Signal Thread did not furnish or have title to the basic raw material, the yarn, at the beginning of the process. Its supervision was limited to some of the operations at the Wiscassett mill, and that supervision was not performed by a resident employee of Signal Thread, but by periodic visits and by telephone. In *Signal Thread,* this Court held that manufacturing work contracted outside the State of Tennessee did not amount to doing business elsewhere, and such other out-of-state business operations as were asserted by Signal Thread, were likewise insufficient to constitute doing business elsewhere. Thus, any use of the apportionment formula was denied.

This Court has heretofore filed an opinion written by the writer, wherein we agreed with the Commissioner that, applying the test in *Signal Thread,* taxpayer was not engaged in the *manufacturing* business outside of Tennessee. Taxpayer filed a petition to rehear and, upon reconsideration of the case, we are of the opinion that it is improper to apply the test of what constitutes doing business in another state for purposes of the original use of the formula, to each of the three parts of the formula. In effect, our original holding in this case would have led to a requirement that a taxpayer show that his operations constitute doing business as to each of the three parts of the formula, (1) the ownership of out-of-state assets, (2) its manufacturing or processing operations, and (3) its sales activities. We find nothing in the excise and franchise tax statutes that justify such an interpretation and are now convinced that *Signal Thread* should not be so applied.

■ It is conceded that taxpayer is engaged in manufacturing in Tennessee and that its activities constitute doing business outside the State of Tennessee as contemplated in T.C.A. § 67–2706. There is simply nothing in our statutes that require the taxpayer to make a further showing that its manufacturing activities, standing alone, would constitute doing business outside of Tennessee, as a prerequisite to using Part (b) of T.C.A. § 67–2707.

There yet remains the question of whether or not the costs incurred in the operations at the three out-of-state mills are "costs of manufacturing, collecting, assembling or processing."

It is the Commissioner's position that these are not manufacturing costs because taxpayer does not own and operate the manufacturing facilities. The day-to-day operation must be said to be under the overall direction of the taxpayer. The entire activity of the three out-of-state mills consists of processing raw materials purchased and delivered to said mills for processing, and at all times owned by taxpayer. The method and manner and formulas used for mixing are in accordance with the instructions and directions of the taxpayer. Every ingredient used is purchased and title vested in the taxpayer, at all relevant times, and insured by and for the taxpayer, and products liability insurance on the feeds sold is carried by taxpayer. The entire production at said mills, as to type and quantity, is dictated by taxpayer. It is true that all employees, save one, at the three mills, are on the payroll of an entity other than the taxpayer, but every activity which they perform is for the use and benefit of the taxpayer, using its materials and proceeding in accord with its overall direction.

While the question remains a close and difficult one, we are of the opinion that, under the particular facts of this case, costs incurred by taxpayer at the three out-of-state mills may be properly treated as costs of manufacturing, collecting, assembling and processing, in Part (b) of the apportionment formula. We are of the opinion that it is in accord with good accounting practice to designate these as manufacturing costs, both in arriving at net earnings everywhere and as a part of the apportionment formula.

It follows, as a matter of course, that if taxpayer is entitled to use Part (b) of the formula in T.C.A. § 67–2707, it is entitled to use Part (b) of the formula prescribed in T.C.A. § 67–2913 in computing its franchise tax.

We grant the petition to rehear, withdraw our original opinion, and adopt the foregoing as our opinion in this case. The decree of the Chancery Court of Knox County is affirmed. The costs are adjudged against Commissioner.

DYER, C. J., McCANLESS, J., and JENKINS, and LEECH, Special Justices, concur.