The NAVARRE CORPORATION,
Appellant-Plaintiff,

v.

George M. TIDWELL, Commissioner of
Revenue, State of Tennessee,
Appellee-Defendant.

Supreme Court of Tennessee.

June 16, 1975.

Witt, Gaither, Richardson, Henniss & Whitaker, Chattanooga, for appellant-plaintiff.

Everett H. Falk, Asst. Atty. Gen., Nashville, for appellee-defendant; R. A. Ashley, Jr., Atty. Gen., of counsel.

## OPINION

HARBISON, Justice.

This action was filed by appellant, The Navarre Corporation, seeking to recover franchise and excise taxes, together with interest and penalty thereon, which had been paid under protest. The issue presented is whether or not appellant was doing business during the tax years in question "in Tennessee and elsewhere" so as to entitle it to use the apportionment formula for excise and franchise taxes contained in T.C.A. §§ 67–2710 and 67–2916. Since appellant is neither a common carrier nor a manufacturer, apportionment is claimed on the basis of the proportion of gross receipts in Tennessee to total gross receipts for the years in question.

The facts of the case are substantially undisputed. Appellant is a Tennessee corporation, having its principal office and place of business in Chattanooga. There are no corporate offices regularly maintained at any other place than the home office in Chattanooga, and all of the employees of the company except two are residents of Chattanooga. Appellant has not domesticated its charter or otherwise formally qualified to do business in any other state of the United States or abroad. During the tax years in question it has paid no excise or franchise taxes to any other state

of the United States. It has paid some national taxes to the State of Israel, the nature of which is not clear in the record, although in one exhibit these taxes are referred to as income taxes.

In response to an inquiry from the Tennessee Department of Revenue, concerning the operations of appellant during the tax years in question, an accountant for appellant wrote, "No taxes, based upon or measured by net earnings, are paid to any state other than Tennessee. The Corporation has no offices located outside Tennessee."

The business of appellant is related to the soft drink industry, and, according to the record, falls into two major categories or divisions. One of these is a sales operation, in which various kinds of supplies are sold to soft drink bottling companies. Appellant used its own force of salesmen during the first portion of the tax period involved (the total period being 1967 through 1971), but during 1968 or 1969 the company changed its method of operation in this field and retained only two full-time employees in the sales division. Thereafter it used a system of independent brokers situated at various points in the United States "to augment sales where we did not have direct coverage", according to the testimony of Mr. Navarre.

These brokers were not full-time employees of The Navarre Corporation. They lived in the territories where they served, and they had other clients or customers by whom their services were employed, in addition to appellant. When these brokers or commission salesmen made sales, the products involved were manufactured by independent companies and shipped from the manufacturer to the customer. Some of the billing for these sales was done by appellant, which received payments in Chattanooga and deducted its commission, remitting the balance to the manufacturer. In other instances the manufacturer did the billing and remitted to appellant at Chattanooga its commission. A few of the customers were situated in Tennessee, but most of the sales were made to customers situated in other states. One of the salesmen, who lives in South Carolina, received a salary as well as a commission. The president of the company, who is also a non-resident of Tennessee, received a salary. All other salaried personnel of the appellant live in Chattanooga and operate from the Chattanooga offices.

The other division or major segment of the business of appellant is the rendering of personal services in the form of management services to bottling companies located in other states or abroad. Primarily these services were rendered to the Coca-Cola Bottling Company of Miami, Florida and to various plants or bottling companies owned or controlled by the Miami company. The Miami Coca-Cola Bottling Company is a separate corporation, publicly owned, in which appellant has a substantial stock ownership and with which appellant has a management services contract. The president of appellant is also president of this Miami company. He draws no salary from the Miami company, but is paid by appellant, apparently, for all services rendered by him to both companies. The other principal company with which appellant had management services contracts is a Coca-Cola Bottling Company located at Tel Aviv in Israel. Appellant also has a financial interest or ownership in this company. In performing these management services contracts, the president of appellant or other personnel employed by appellant frequently go to the situs of the company being serviced, sometimes remaining there for substantial periods of time. The services involve the giving of advice and making of policy decisions concerning finance, distribution, production and other aspects of the soft drink business. Personnel of appellant have the use of office facilities at the various bottling plants being serviced, but, as previously stated, there is no serious contention that the appellant actually maintained regular business offices outside of

the State of Tennessee during the tax years involved here.

Appellant owns very little property situated outside of the State of Tennessee. It has a wholly owned subsidiary corporation in Florida which owns an apartment house. Appellant also owns a small tract of land in Florida on which is situated a cabin or camp, occasionally used by personnel of the company. It also owns a boat which was situated in Florida during at least part of the tax years in question, and on which business conferences and meetings were held. When the boat was not being used by company personnel, it was available for lease to third parties.

For performing its management services contracts, appellant received a fixed commission on each case of soft drinks sold by the company being serviced. In connection with the Tel Aviv operation, appellant paid taxes to the government of Israel. The president of appellant testified, "I don't know what form this tax takes, but it's about 25 percent that they put on it. I think we receive only 75 percent of the total that is due us."

At another point Mr. Navarre testified, ". . . I don't really know what tax it is from them. It may be an income tax. It may be an excise tax. It's a tax on funds going out of Israel."

An accountant for the firm testified:

"Q Exactly what is the Israeli tax that you mention? What type of a tax is it?

"A It is an income tax, but it is on gross income before any deductions."

The accountant testified that he was not sure whether the tax was on the right to do business in the State of Israel or whether it was a tax on money withdrawn from that nation. As previously pointed out, remittance advices exhibited in the record refer to the tax as an income tax. Its nature, purpose and incidence are not otherwise defined in the record before us.

■ It is conceded by all parties that the Tennessee Franchise and Excise Taxes are taxes on the privilege of doing business in Tennessee in corporate form. *Nashville & Decatur R. Co. v. Atkins*, 489 S.W.2d 837, 842 (Tenn.1973); *Texas Gas Transmission Corp. v. Atkins*, 197 Tenn. 123, 270 S.W.2d 384 (1954), *cert. den.*, 348 U.S. 883, 75 S.Ct. 125, 99 L.Ed. 694 (1954).

■ Appellant also concedes that for a domestic corporation of this state to be entitled to apportionment, the taxpayer must show that it is actually engaged in business in corporate form in jurisdictions other than Tennessee, and that the burden of establishing this entitlement rests upon the taxpayer. *John Ownbey Co. v. Butler*, 211 Tenn. 366, 365 S.W.2d 33 (1963); *Signal Thread Company v. King*, 222 Tenn. 241, 435 S.W.2d 468 (1968).

As stated by this Court in *Roane Hosiery, Inc. v. King*, 214 Tenn. 441, 381 S.W.2d 265 (1964), the purpose of the apportionment formula is to prevent duplicate taxation on corporations doing business in Tennessee and elsewhere. The Court said in that case:

"When we thus look at this tax, which is imposed here, and the apportionment formula which is a part of this act, it is plain to see that the Legislature had in mind that they didn't want to impose double taxation or duplicate taxation on any corporation, but so long as the corporation is a Tennessee domestic corporation doing business here, it should pay taxes as the statute provided on its total net earnings. But if the corporation could, and did, show that it was doing business and paying a tax on the business done in another state, then this apportionment formula would apply. The only common sense and logical conclusion to reach from the enactment of this statute is that the burden is on the corporation to show the Commissioner this, and then the Commissioner applies the formula." 214 Tenn. at 447, 381 S.W.2d at 268.

It was pointed out in the *Ownbey* case, *supra*, that the test of "doing business" as used in the excise and franchise taxing statutes, is not the same as the test used in determining whether a corporation is amenable to service of process in a particular jurisdiction; other and different considerations are involved when considering the subject for purposes of construing tax laws.

Generally, where a Tennessee corporation seeks to claim the benefit of the apportionment formula, it has been required to show a substantial number of contacts with another jurisdiction in order to bring itself within the concept of "doing business" in that jurisdiction. Actual domestication or qualification to do business in another jurisdiction is one of the criteria which has been emphasized; the payment of franchise or excise taxes, or taxes substantially equivalent in nature, to another jurisdiction has also been a major consideration. Both of these are admittedly lacking in the present case, insofar as appellant is concerned. These are not necessarily the sole criteria for permitting apportionment, but certainly, under the Tennessee cases, a very strong showing would have to be made by a taxpayer which had neither qualified to do business in another jurisdiction nor paid privilege taxes there on the privilege of doing business.

The right of Tennessee corporations to use the apportionment formula for excise taxes was considered in detail by the Court in the case of *John Ownbey Co., Inc. v. Butler*, 211 Tenn. 366, 365 S.W.2d 33 (1963). There four different domestic corporations claimed benefit of the apportionment formula provided for manufacturing corporations, T.C.A. § 67–2707. None of them was held entitled to the benefit thereof. The Court said:

"It seems to us that clearly the undisputed facts in these cases show that these are Tennessee corporations with Tennessee operations done wholly in Tennessee controlled by Tennessee home offices;

that the orders and contracts are subject to acceptance in the home office; that the shipments are made from Tennessee headquarters; and that no place of business is maintained elsewhere; therefore the only conclusion to reach is that all the corporate earnings are inevitably realized at the respective Tennessee offices." 211 Tenn. at 381, 365 S.W.2d at 39.

In the case of *Roane Hosiery, Inc. v. King*, 214 Tenn. 441, 381 S.W.2d 265 (1964), a Tennessee corporation had acquired all of the stock of a selling corporation chartered in Delaware. The Tennessee corporation made practically all of its sales through the Delaware corporation, paying that corporation a commission. It sought the benefit of the apportionment formula of the excise tax statutes, but was held not entitled thereto. The Court said:

"We might add that it was the purpose of the Legislature in enacting this excise tax statute to place a tax on all business done within this State unless it was taxed by a foreign state, and if this were done, that is taxed by a foreign state, a showing to this effect could be made under the apportionment formulae statutes above cited and the apportionment formula would then be followed by the Commissioner. We think that this is the meaning of sec. 67–2707, T.C.A.

"This tax is imposed upon the privilege of doing business in corporate form in this State. *Texas Gas Transmission Corp. v. Atkins*, supra. The tax is not laid upon the corporate earnings directly in the sense that an income tax is so laid, but it is measured entirely by the net income of the corporation." 214 Tenn. at 446, 381 S.W.2d at 267.

In that case, it was argued by the taxpayer that its activities were such as to make it subject to certain New York state taxes. The record did not show, however, that there had been any attempt by the New York taxing authorities to levy any such taxes, and the Court emphasized that the

taxpayer was not qualified to do business in corporate form in the State of New York.

In the present case it is contended that appellant was subject to certain taxes by the State of Florida because of its activities there. It does appear that in years subsequent to the tax period in question, the taxpayer paid certain taxes to the State of Florida. One of the Florida taxing statutes involved, however, did not become effective until 1972, which was after the tax years involved in the present litigation. Although another Florida corporate tax, the franchise tax, was shown to have been in existence during the tax years in question, appellant did not pay it, nor was it apparently required or advised to do so.

In the case of *Signal Thread Co. v. King*, 222 Tenn. 241, 435 S.W.2d 468 (1968), even the voluntary payment of taxes to another jurisdiction was held not to entitle the taxpayer to the apportionment formula, where the Court found insufficient permanent contacts or nexus with the other jurisdiction to bring it within the concept of "doing business" there. In that case the taxpayer, a Tennessee corporation, processed and finished certain raw materials into finished thread in Chattanooga, Tennessee. Most of the thread sold by the taxpayer, however, was processed and finished at plants located in North Carolina, which plants were owned by other corporations. The taxpayer had one full-time resident employee in the State of North Carolina, who solicited orders which were submitted to the home office in Chattanooga. Personnel of the taxpayer from time to time went to the North Carolina mills in order to check on the machinery being used and on product quality. The taxpayer at all times owned a certain stock of finished goods or work in process situated in North Carolina, which it insured but on which it did not pay North Carolina ad valorem taxes. After the taxpayer became involved in a controversy with the Tennessee Department of Revenue as to its right to use the apportionment formula, the tax-

payer voluntarily paid franchise and income taxes to the State of North Carolina covering most of the tax years in dispute.

This Court affirming the chancellor and holding that the taxpayer was not entitled to apportionment, said:

"As we view it, the assertion that appellant was doing business in North Carolina during the tax years involved is based upon the following: (1) The maintenance in Charlotte of one full-time employee, engaged in selling thread, who uses his home as an office. (2) The engagement by appellant of corporations in North Carolina to do manufacturing work for it upon a contract basis; during which manufacturing work one or more of appellant's employees is required to go from Tennessee to North Carolina for quality inspection checks of machines and product to see that the special quality of the thread is maintained. (3) The presence in North Carolina of inventory in the course of processing or awaiting shipment. (4) The voluntary payment by complainant to North Carolina, immediately prior to the commencement of this suit, of corporate income and franchise taxes for the tax periods covered by this suit.

"Neither the individual nor the collective effect of these factors amounts to doing business elsewhere, so as to entitle appellant to apportion as it insists. *John Ownbey Co. v. Butler*, 211 Tenn. 366, 365 S.W.2d 33." 222 Tenn. at 253, 435 S.W.2d at 473.

In the present case appellant insists that since it is not engaged in manufacturing products in Tennessee or selling products from its Tennessee headquarters, and since it renders personal services rather than making sales of products, insofar as its management services contracts are concerned, the principles announced in the foregoing authorities should not be applicable to it. It insists that, particularly insofar as the management services contracts are

concerned, its personnel are required to go into other jurisdictions and that the commissions and profits earned by appellant are earned by reason of services rendered in those jurisdictions.

While it is conceded by the State that the appellant does have "contacts" with other jurisdictions, it is insisted by the Commissioner that these contacts are insufficient to entitle appellant to apportion its excise and franchise taxes to those jurisdictions, especially in view of the absence of qualification and payment of taxes there.

■ After careful consideration of the record, this Court is of the opinion that the position of the Commissioner is correct and that the taxpayer has made an insufficient showing to entitle it to use the apportionment formula. It is basically a Tennessee corporation, operating out of Tennessee headquarters, and deriving its privileges to do business in corporate form from the State of Tennessee. Although it might be deemed to be "doing business" in other jurisdictions for purposes of service of process under various types of "long arm" statutes or other extraterritorial statutes, we do not believe that it has sufficiently shown that it is "doing business" in any other jurisdiction, during the tax years in question, to entitle it to apportion its gross receipts for purposes of Tennessee franchise and excise taxes.

No question is made as to the validity of the contractual arrangements between appellant and its affiliated corporations regarding the personal service contracts, nor is anything said here intended to reflect upon these in any way. It is obvious, however, that these contracts afford a medium or channel through with the Miami and the Israeli companies may compensate their own officers or stockholders for services rendered, in view of the interlocking stock ownership and dual official relationships shown in the record. We do not attach as great significance to these contracts as might be done in the case of a completely independent and unrelated consulting or counseling firm. The contracts undoubtedly are deemed expedient and useful for corporate purposes and accounting. However, insofar as services rendered under them are relied upon to constitute "doing business" in other jurisdictions for purposes of the present case, we cannot attach the controlling weight to them which is contended for by appellant.

The judgment of the chancellor is affirmed at the cost of appellant.

FONES, C. J., COOPER and HENRY, JJ., and GODDARD, Special Justice, concur.

BROCK, J., not participating.