**COOK EXPORT CORPORATION,**
**Plaintiff-Appellee,**

**v.**

**John K. KING, Commissioner of Revenue**
**of the State of Tennessee,**
**Defendant-Appellant.**

Supreme Court of Tennessee.

May 26, 1981.

Frank L. Watson, Jr. & Louis Jay Miller, Waring, Cox, Sklar, Allen, Chafetz & Watson, Memphis, for plaintiff-appellant.

Jim G. Creecy, Deputy Atty. Gen., Nashville, for defendant-appellant; William M. Leech, Jr., Atty. Gen., Nashville, of counsel.

## OPINION

HARBISON, Chief Justice.

In this action Cook Export Corporation, a wholly owned corporate subsidiary of Cook Industries, Inc., seeks refund of corporate excise and franchise taxes for the years 1972 and 1973. During those years it did business in no other state than Tennessee, nor did it have any corporate officers, directors, offices, or employees in any other state during that period. Nevertheless the corporation contends it is wholly exempt from Tennessee corporate taxation upon the ground that it is nothing more than an "accounting entity" or "incorporated file drawer" and does not "do business" in Tennessee or in any other state. The Chancellor granted summary judgment to the plaintiff, sustaining its insistence as a matter of law, and the Commissioner has appealed. We reverse and remand for further proceedings.

■ Cook Industries, Inc., is a corporate conglomerate, having many subsidiaries and affiliate corporations. It is engaged in numerous domestic and foreign enterprises, including the export of grain and other commodities. It took advantage of congressional legislation, I.R.C. §§ 991–997, to create Cook Export Corporation, a wholly-owned subsidiary, in order to gain favorable income tax treatment for the parent's foreign export operations.

One of the basic requirements of the federal legislation is that such a subsidiary, known as a Domestic International Sales Corporation (DISC), be a legally incorporated and structured corporation under the laws of one of the states or of the District of Columbia. Cook Export Corporation was chartered under the laws of Delaware, with its parent, Cook Industries, Inc., being the sole stockholder. The charter is not in the record, but it is stipulated that six hundred shares of the common stock of a par value of five dollars each were issued to the parent, representing paid-in capital of three thousand dollars. It is stipulated that the parent has its principal office and place of business in Memphis, Tennessee, as does the subsidiary. Corporate officials of the parent are also the corporate officers and directors of the subsidiary. The subsidiary has a president, a vice president, a secretary, a treasurer, a comptroller, and two assistant secretaries. It adopted a corporate seal and was fully organized as a separate legal entity.

Numerous lengthy, detailed contracts were entered into between the parent and the subsidiary, all of them being executed in Memphis, Tennessee, and each reciting that the subsidiary had its principal office and place of business there. All of the contracts, except two, were to be construed according to the laws of the United States and the laws of the State of Tennessee. In addition, the subsidiary entered into sales contracts with Riverside Industries, Inc., a Mississippi corporation, also having its principal office in Memphis at the corporate headquarters of Cook Industries, Inc.

While it is quite apparent, and indeed is stipulated, that the purpose for the creation of the subsidiary was to enable the parent to take advantage of favorable federal income taxation, this, in itself, in our opinion does not exempt the subsidiary from state corporate taxation. All corporations are legal fictions, and all are created for business purposes of one type or another. Most subsidiaries are controlled, in large degree, by their parents and are created for business purposes, frequently including tax considerations, of the parent.

Appellee contends that this properly organized and chartered subsidiary corporation does not do business in Tennessee or in any other place and that in effect it is a mere phantom. We do not find that this contention is sustained by the record. The subsidiary entered into binding legal contracts with the parent which were amended from time to time. Under these the parent paid to it sales commissions on foreign sales. During the two tax years in question the parent funneled more than forty-two million dollars of income into the subsidiary, which was responsible for billings and collections on specified export sales. The subsidiary also entered into a contract with the

parent under which it agreed to purchase accounts receivable from the parent, and in fact it did purchase large amounts of these. Separate books and records of the subsidiary were carefully kept. Clearly it would protest strenuously if federal tax authorities should contend that it was not a properly constituted separate corporate entity as required by the federal legislation involved. Its officers and directors declared dividends out of its earnings payable to the parent. The Tennessee Commissioner of Revenue allowed the parent to exclude these from its corporate earnings for excise tax purposes pursuant to the provisions of T.C.A. § 67–2701 *et seq.*,[1] governing dividends from wholly-owned subsidiaries.

During the tax years in question the subsidiary did not pay state franchise or excise taxes, or their equivalent, to any other state of the United States. All of its contracts were executed in Tennessee, and all directors' meetings and management decisions occurred in this state. In our opinion the making of substantial contracts involving the receipt and disbursement of millions of dollars, the keeping of books and records and the complicated accountings incident to these contracts, the payment of corporate dividends, banking, the purchase and handling of accounts, and the management of corporate affairs constitute "doing business" within the purview of the Tennessee corporate franchise and excise tax laws.

Like appellee, many subsidiary corporations do not have separate employees or payrolls, but this does not mean that they lack corporate existence or do not do business within the meaning of the statutes under consideration. It is untenable for the parent to contend that this subsidiary does not effectively exist for purposes of state taxation and yet insist that it does exist as a viable legal entity for purposes of federal taxation. The record clearly shows that

this subsidiary exercised its corporate franchise in Tennessee and received substantial earnings under financial arrangements with its parent.[2]

The fact that parties may conduct business transactions in such a way as to take advantage of federal taxation does not necessarily entitle them to exemption from state taxation under other and different statutes. *See Tidwell v. Berke*, 532 S.W.2d 254 (Tenn.1975). Nor will parties which have deliberately adopted a corporate structure and form be permitted to disregard these when they become disadvantageous. In the case of *Widdicombe v. McGuire*, 221 Tenn. 601, 429 S.W.2d 815 (1968), a corporation had brought suit in the chancery court. Later it was to the procedural advantage of its principal stockholder to contend that the corporation was merely a sham or shell without separate legal existence apart from him. Rejecting that contention, and quoting from a decision of the United States Supreme Court, this Court said:

"There is shown no basis upon which we would be justified in saying that throughout all of the multiple transactions reflected in this record the corporation was a mere shell or sham, whose existence should be disregarded. We think that the following statement by the United States Supreme Court is appropriate:

'While corporate entities may be disregarded where they are made the implement for avoiding a clear legislative purpose, they will not be disregarded where those in control have deliberately adopted a corporate form in order to secure its advantages and where no violence to the legislative purpose is done by treating the corporate entity as a separate legal person. *Schenley Distillers Corp. v. United States*, 326 U.S. 432, 437, 66 S.Ct. 247, 249, 90 L.Ed. 181, 184 (1946).'" 221 Tenn. at 607–608, 429 S.W.2d at 817–818.

---

1. All statutory references are to provisions in effect during the tax years in question. These were revised or superseded in 1976 and subsequent years.

2. By 1973 the subsidiary was reported to have assets of $41,755,582. Under federal tax laws

and regulations some of these funds were deemed to have been distributed to the parent. The remainder continued to be the separate assets of the DISC and were available for use in its business operations if desired, subject to certain restrictions in the applicable statutes.

Numerous issues raised in the complaint were not considered by the Chancellor because of his ruling that the subsidiary, in effect, lacked separate corporate existence and was not "doing business." We reverse that decision and remand the case to the Chancery Court for further proceedings and development of other issues, including the right, if any, of the subsidiary to claim the benefit of an apportionment of its earnings among Tennessee and other states.[3]

The judgment of the Chancellor is reversed and the cause is remanded for further proceedings consistent herewith. Costs incident to this appeal will be taxed to the appellee. All other costs will be fixed by the Chancellor.

FONES and COOPER, JJ., concur.

BROCK and DROWOTA, JJ., dissent.

DROWOTA, Justice, dissenting.

I respectfully dissent.

T.C.A. §§ 67–2702 and 67–2902 as they exist now and as they existed during the tax years in question impose corporate excise and franchise taxes upon, "all corporations, ... organized for profit under the laws of this state or any other state or country and doing business in Tennessee, ...." Thus, a corporation is not subject to excise and franchise taxation simply because it is organized for profit. The corporation must also be "doing business in Tennessee" during the year of the assessment. The term "doing business" is not defined anywhere in the chapter on franchise taxes or the chapter on excise taxes. Therefore, the task of defining the term is left to the courts. Since there have been several decisions setting forth the perimeters of the term "doing business," I feel a review of these decisions is not only helpful but necessary.

Tennessee cases construing the term "doing business" have not arisen under the statutes here involved. Instead, the cases have arisen under the apportionment provisions of the franchise and excise tax statutes. T.C.A. § 67–2710 and 67–2916 (now superseded). These provisions allow a corporation which is "doing business in Tennessee and elsewhere" to escape taxation upon the earnings and assets attributable to their operations "elsewhere" than Tennessee. Although it might be argued that "doing business" for the purpose of the apportionment statutes involves more substantial activities than "doing business" for the purpose of the taxing statutes, this precise proposition was expressly rejected by this Court in *Bluff City Transfer & Storage Company, Inc. v. Woods*, filed at Nashville October 23, 1978. Therefore, we must assume that if a corporation's activities in another state are not consequential enough to entitle it to apportionment, those same activities would be insufficient to confer the taxing power upon this state if those activities were the corporation's sole nexus with Tennessee. With that premise, we turn to the Tennessee decisions.

Perhaps the most comprehensive opinion on the subject is *Navarre Corporation v. Tidwell*, 524 S.W.2d 647 (Tenn.1975). Navarre Corporation utilized independent brokers located in various states to augment soft drink sales in states where the company had no full time employees. The corporation also had two full time employees who resided outside of Tennessee. In addition, the corporation rendered management services to bottling companies in other states and abroad. Nevertheless, this Court held that Navarre's contacts outside Tennessee were not consequential enough to constitute "doing business" "elsewhere." Justice Harbison's opinion in *Navarre* examines three earlier Tennessee cases on the subject: *John Ownby Co. v. Butler*, 211 Tenn. 366, 365 S.W.2d 33 (1963); *Roane Hosiery, Inc. v. King*, 214 Tenn. 441, 381 S.W.2d 265 (1964); and *Signal Thread Co. v. King*, 222 Tenn. 241, 435 S.W.2d 468 (1968). Since the opinion sets forth the facts in each of those cases, no detailed recitation of the facts

---

3. An affidavit of a state tax official indicated that the subsidiary established contacts in other states after 1973 which might entitle it to an apportionment but indicated that it had not done so during the tax years in question.

need be made here. Suffice it to say that in each case the corporation engaged in sales in other states either through the use of full time employees or independent sales agents. In each case the Court held that there was an insufficient ". . . nexus with the other jurisdiction to bring it within the concept of 'doing business'." 524 S.W.2d 651.

These three cases coupled with *Navarre* illustrate that the inquiry into whether a corporation is "doing business" necessarily involves a qualitative and quantitative analysis of the activities of the corporation. In fact, in *Signal Thread, supra,* even the voluntary payment of taxes to another jurisdiction was held not to entitle the corporation to apportionment where the corporation's activities elsewhere were not substantial enough to be considered "doing business." Such an examination is perhaps even more critical when, as here, the existence of taxing jurisdiction is at issue. This is so because in this type of case the court cannot look to the payment or non-payment of taxes in the other jurisdiction as it can when the issue is whether the corporation is doing business "elsewhere." This inquiry is also required by the taxing statute because in order to give meaning and effect to the term "doing business" the Court must look into the corporation's activities. Were we to hold that a corporation subjects itself to taxation simply by filing a corporate charter in Tennessee, we would turn the statutory language ". . . and doing business in Tennessee . . ." into surplusage.

In my judgment, the majority opinion comes perilously close to just such an interpretation and reaches a result which is inconsistent with *John Ownby, Roane Hosiery, Signal Thread,* and *Navarre, supra.* For example, Cook Export's activities in Tennessee cannot by any stretch of the imagination be characterized as more substantial than were those of Navarre Corporation in places elsewhere than Tennessee. Cook Export had no salespersons, no clerks, no secretaries, and no bookkeepers. It had no grain warehouses or vehicles. It made no calls to overseas merchants. In short, its activities were very limited. The majority

opinion in this case, however, suggests that if in *Navarre,* the corporation had paid a large commission to an out of state sales agent, the payment of this large commission pursuant to contract would have qualified Navarre Corporation as "doing business in Tennessee and elsewhere" even if they had had no salaried personnel or assets whatsoever outside of Tennessee.

In addition the majority opinion seems to rely upon facts which in my judgment serve only to clutter a proper analysis of this issue. These facts include Cook Industries' principal place of business, Cook Export's principal place of business, the failure of Cook Export to pay taxes in other states, the activities of the parent corporation, the amount of Cook Export's paid in capital, the existence of corporate officers, and the adoption of a corporate seal. The parties have conceded that Cook Industries is doing business in Tennessee, that Cook Export is a bona fide corporation, and that if doing business anywhere at all, Cook Export is doing business in Tennessee.

I find it puzzling that the majority labels "untenable" the proposition that Cook Export could be recognized as a DISC under the federal tax law and not recognized as "doing business in Tennessee." I know of no cases even intimating that the Internal Revenue Code determines the way Tennessee courts interpret our statutes.

Finally, the majority also relies upon the fact that Cook Export kept books and records, paid dividends and accomplished routine banking transactions. I respectfully submit that these facts are also of little or no significance since it is entirely possible for a corporation to keep books and records, pay dividends, and transact banking business before it ever engages in any gainful activity whatsoever.

Cook Export's only significant activity was its entering into contracts with its parent Cook Industries and with another Cook Industries subsidiary, Riverside Industries, Inc. So the proper issue before this Court is whether these activities constitute "doing business in Tennessee." If this were the

first case in this jurisdiction interpreting the term "doing business," a viable argument could be made that entering into these contracts does constitute "doing business." When I compare, however, the activities of Navarre Corporation outside of Tennessee to the activities of Cook Export in Tennessee, I cannot reconcile *Navarre, supra*, with the result reached by the majority.

This is not to say that these substantial earnings and assets should have escaped excise and franchise taxation altogether, only that the Commissioner failed to tax the proper entity. The Commissioner should have attributed to the parent, Cook Industries, the earnings and assets of its subsidiary, Cook Export. This approach is more consonant with our taxing statute. It neutralizes the State's insistence that it is impossible for a corporation to accumulate so much in "earnings" without "doing business." It alleviates the concern that business conglomerates such as this will achieve a permanent tax exemption. Finally and most importantly, it leaves the Navarre line of cases undisturbed.

Under the excise tax statutes applicable during the tax years in question, the term "earnings" is not well defined. As ordinarily used the term involves " . . . compensation for labor or the use of capital." Webster's Third New International Dictionary, p. 714 (1976). Thus, the "earnings" which the Commissioner seeks to tax here are actually the result of Cook Industries' labor and employment of capital and should be so characterized. Under the statute, we do know that "earnings" do not include dividends received from a wholly owned subsidiary which paid excise taxes. Acts 1923, Ch. 21, § 1. When the wholly owned subsidiary does not pay excise taxes, however, dividends received by the parent would presumably be considered "earnings." If, therefore, the Commissioner did not assess Cook Export, dividends received by Cook Industries from Cook Export would be considered "earnings" for the purpose of the applicable excise tax statute. The statute is silent, however, as to whether the State must wait until distribution of the dividend to the parent to tax these earnings or whether the State may attribute the subsidiary's "earnings" to the parent in the year in which they were earned. Since the excise tax is a tax upon the privilege of doing business, it is more consistent with the purpose behind the excise tax to tax the entity doing the business in the year the business was done. As to franchise taxation, assets available for use by the parent but in legal possession of a wholly owned subsidiary not paying franchise taxes would escape franchise taxation altogether if attribution was not allowed. In summary, when the Commission does encounter a subsidiary wholly owned by a corporation doing business in Tennessee and the subsidiary cannot be taxed because its activities do not constitute "doing business" in Tennessee, I find it consistent with our taxing statute and corporate realities to attribute these earnings and assets to the parent. I recognize the statute contains no express guidelines for determining when attribution is appropriate. We could look for guidance, however, to the excise tax exemption for dividends paid by a *wholly* owned subsidiary *not paying excise tax* and only utilize attributions in that type of situation. In any event, it will be fairly unusual for a subsidiary to have taxable earnings and capital and yet not have engaged in substantial enough activities to be considered "doing business."

In this case, attribution may not now be possible because of the failure of the Commissioner to attempt to tax the parent or seek a declaratory judgment on the issue before the statute of limitations ran. *See,* T.C.A. § 67–1323. I recognize that this would be a windfall for Cook Industries but that should not and does not affect my opinion as to the proper disposition of this case. I would note that there appears in the record an Opinion of the Attorney General which raises the issue of attribution but concludes, erroneously in my opinion, that attribution is inappropriate because of the lack of express guidelines in the statute. I point this out to show that the Commissioner was alerted that attribution was a possible alternative to taxing the subsidiary

but nevertheless took no action to preserve his right to sue.

Since I would hold that Cook Export's activities are insufficient in quantity and significance to constitute "doing business in Tennessee," I would affirm the Chancellor.

I am authorized to state that Mr. Justice Brock joins with me in this dissent.