**BROADMOOR–KINGSPORT APARTMENTS, INC., and Broadmoor-Kingsport Associates, Appellees,**

v.

**STATE of Tennessee and John K. King, Commissioner of Revenue, Appellants.**

Supreme Court of Tennessee, at Knoxville.

March 4, 1985.

Charles L. Lewis, Asst. Atty. Gen., W.J. Michael Cody, Atty. Gen. & Reporter, Nashville, for appellants.

William T. Gamble, Daryl J. Brand, Wilson, Worley, Gamble, & Ward, P.C., Kingsport, for appellees.

## OPINION

COOPER, Chief Justice.

This action was instituted by Broadmoor-Kingsport Apartments, Inc. (BKAI) to recover $19,810.00 in corporate franchise taxes, penalty and interest assessed by the Tennessee Department of Revenue for 1975, 1976 and 1977, and paid under protest. BKAI contended that it had not been doing business in Tennessee within the meaning of T.C.A. § 67–2902 (now § 67–4–903(a)), and, in the alternative, that no tax was owed under T.C.A. § 67–2908 (now § 67–4–906(a)), since it had neither owned or used property of value in Tennessee. On considering the facts stipulated and the applicable statutes and authorities, the Chancellor found that BKAI did business in Tennessee during the tax years in question and was thus subject to pay the franchise tax. The Chancellor also found that BKAI did not own or use any property of value in Tennessee during the tax years, and that its tax liability was limited to the minimum tax of $10.00 in each tax year. The Chancellor then ordered a refund of the taxes paid under protest.

Two issues are presented to us on appeal. Did BKAI do business in Tennessee during the tax years in question? If so, should the value of the Kingsport apartment complex, to which appellee held record title, be included in the franchise tax base? The Commissioner included the value of the apartment complex in the tax base in making the assessment that resulted in this court action.

In 1973, a group of investors sought to acquire and develop an apartment complex in Kingsport, Tennessee. These investors formed Broadmoor-Kingsport Associates (BKA), a limited partnership, to be the ultimate record owner of the property, but they realized, as the parties have stipulated, "that because of the restrictions of usury statutes of various states the development might require or make desirable the interim use of other legal entities." Thus the taxpayer, Broadmoor Kingsport Apartments, Inc. (BKAI), was chartered in Missouri in December of 1974. It qualified to do business in Tennessee shortly thereafter. Title to the apartment complex and land was transferred to BKAI, and a Nominee and Agency agreement was entered into by BKA and BKAI. This agreement provided that BKAI

agrees to acquire and hold record title to Property as nominee on behalf of and for convenience of Principal [BKA], and to borrow sums from time to time for construction of improvements of the Property as nominee on behalf of and for convenience of Principal (and in borrowing such sums to execute such notes, deeds of trust, deeds of release, building loan agreements, construction and disbursing escrow agreements, security agreements, and such other documents as directed by Principal).

BKAI also agreed to execute leases at BKA's direction, and to convey the property to BKA on demand. BKAI was paid $500.00 for its services, and was to receive $10.00 for each executed lease.

In 1975, BKAI executed a deed of trust securing a promissory note to First National Bank in St. Louis in the amount of $125,600.00. In 1976, BKAI closed a permanent loan on the property with the First National Bank of Memphis for the amount of $3,965,600.00. In doing so, BKAI executed numerous documents, including a promissory note, a deed of trust, an assignment of rents and leases, a UCC financing statement, and a security agreement. The loan proceeds were disbursed by BKAI on direction of BKA. While no portion of the loan proceeds went to the benefit of BKAI, it was paid a fee for its services. On December 30, 1978, BKAI released and quitclaimed to BKA its record title to the land and apartments. BKAI had no other business in Tennessee or elsewhere.

T.C.A. § 67–4–903(a) provides that "[a]ll corporations . . . organized for profit under the laws of this state or any other state or country and doing business in Tennessee . . . shall . . . pay to the commissioner of revenue, annually a privilege tax . . . ." The privilege tax is imposed at a rate of fifteen cents per $100.00 of the issued and outstanding stock, surplus and undivided profits of the corporation as shown by the last fiscal year's books and records. T.C.A. § 67–4–904(a). In no case, however, is the measure of the tax imposed to be less than "the actual value of the property owned, or property used, in Tennessee." T.C.A. § 67–4–906(a).

The Tennessee franchise and excise taxes are taxes on the privilege of doing business in Tennessee in corporate form. *Navarre Corporation v. Tidwell*, 524 S.W.2d 647 (Tenn.1975). They are not placed upon a particular corporate business or transaction, but upon the privilege of doing business as a corporation and exercising corporate powers for the purpose of producing a profit. *Nashville & Decatur R. Co. v. Atkins*, 489 S.W.2d 837, 840 (Tenn.1973) (quoting *Memphis Dock & Forwarding Co. v. Fort*, 170 Tenn. 109, 92 S.W.2d 408 (1936)). The term "doing business" is not uniformly defined in the cases, and its meaning will vary dependent on the situation. For example, different factors and considerations are applicable when the concern is whether a corporation is amenable to service of process, rather than when franchise and excise taxes are at issue. *Tidwell v. Gaines Manufacturing Co.*, 526 S.W.2d 460 (Tenn.1975). The inquiry into whether a corporation is doing business involves a qualitative and quantitative analysis of the corporation's activities, and the mere filing of a corporate charter in Tennessee is insufficient. *Cook Export Corp. v. King*, 617 S.W.2d 879 (Tenn.1981). The protesting corporate taxpayer in *Cook Export* was held to have been doing business in Tennessee when it paid no franchise or excise taxes to any state, executed all of its contracts in Tennessee, and its director's and management decisions were made in Tennessee. The Court stated:

> In our opinion the making of substantial contracts involving the receipt and disbursement of millions of dollars, the keeping of books and records and the complicated accountings incident to these contracts, the payment of corporate dividends, banking, the purchase and handling of accounts, and the management of corporate affairs constitute 'doing business' within the purview of the Tennessee corporate franchise and excise tax laws. 617 S.W.2d at 881.

BKAI qualified to do business in Tennessee. It held record title to 28.35 acres of valuable land and improvements. It took part in arrangements to finance development of the apartment complex in both 1975 and 1976. The many documents executed for the 1976 loan from the First National Bank of Memphis, previously noted, were recorded in Tennessee and were controlled by Tennessee law. All of BKAI's significant activities were in Tennessee, and it was paid at least $500.00 for its activities in Tennessee on behalf of BKA. These activities, in our opinion, constitute "doing business" in Tennessee for the purpose of the Tennessee franchise and excise tax.

BKAI insists that even if it did business in Tennessee so as to subject it to the Tennessee franchise tax, the Commissioner erroneously included the value of the Kingsport apartment complex in the tax base, since BKAI did not own or use the property during the tax years in question.

The reason for BKAI's existence and its holding of title was to avoid usury statutes of various states, including Tennessee, in the securing of loans needed to develop the apartment complex. As record title holder, BKAI participated in all financing arrangements and disbursed all proceeds from loans secured by the property. This was its sole business. In our opinion, the holding of record title to the property by BKAI and its activities with respect to the property during the tax years in question is such ownership of property of value in Tennessee as to support a franchise tax assessment against BKAI based on the value of the Kingsport apartment complex. It would be untenable to permit a party to take advantage of the corporate form to hold title to property and to conduct business with respect to that property and then permit the party to disavow the corporate ownership when it becomes disadvantageous. *See Cook Export Corp. v. King,* 617 S.W.2d 879, 881 (Tenn.1981).

The judgment entered in the trial court is reversed, and the cause is dismissed.

Costs of the cause will be paid by the appellees.

FONES, BROCK and HARBISON, JJ., concur.

DROWOTA, J., dissents.

DROWOTA, Justice, dissenting.

For the reasons set out in my dissenting opinion in *Cook Export Corp. v. King,* 617 S.W.2d 879, 882–885 (Tenn.1981), I would hold that BKAI is not subject to Tennessee's franchise tax during the years in question because it was not a corporation "doing businesss" in the State of Tennessee within the meaning of the Franchise Tax Law.

T.C.A. § 67–4–903(a) (formerly T.C.A. § 67–2902) provides that franchise taxes must be paid by all corporations "organized for profit under the laws of this state or any other state or country and doing business in Tennessee ...." During the tax years in question, BKAI's activities in Tennessee were limited to (1) holding record title to property and (2) closing a permanent loan on the property, for the benefit and as agent and nominee of BKA, with none of the loan proceeds benefiting BKAI. These activities are insufficient to constitute "doing business" for franchise tax purposes.